# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### January 18, 2012 Session

## STATE OF TENNESSEE v. BO W. PRENDERGAST

**Appeal from the Circuit Court for Williamson County**
**No. II-CR064237     Timothy L. Easter, Judge**

---

**No. M2011-00571-CCA-R3-CD - Filed March 28, 2012**

---

A Williamson County Circuit Court jury convicted the defendant, Bo W. Prendergast, of one count of theft of property valued at over $10,000 but less than $60,000, *see* T.C.A. §§ 39-14-103, -105(4) (2006), and the trial court imposed a sentence of 15 years' incarceration as a Range III, persistent offender to be served consecutively to a previously imposed sentence. On appeal, the defendant challenges the sufficiency of the evidence to support his conviction and urges this court to conclude that the trial court committed plain error by excluding a State's witness's felony convictions for use as impeachment. Discerning neither a paucity in the evidence nor that substantial justice requires consideration of the alleged error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Drew Justice, Franklin, Tennessee (on appeal); and LaShawn A. Williams, Memphis, Tennessee (at trial), for the appellant, Bo W. Prendergast.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Kim R. Helper, District Attorney General; and Mary Katharine White, for the appellee, State of Tennessee.

## OPINION

On May 1, 2009, Linda May Waller contacted the Franklin Police Department (FPD) to turn in a ring she believed to be stolen. FPD Sergeant Eric Anderson received the stolen ring from Ms. Waller following their conversation. That same day, Sergeant Anderson also confirmed the location of a reputedly stolen trailer in the defendant's yard. Sergeant

Anderson contacted the victim, Harold Dean Baker, and asked Mr. Baker whether he was missing a diamond ring and a red trailer. Mr. Baker checked his safe for the ring and confirmed its absence. He, likewise, confirmed that a red motorcycle trailer was missing from his backyard. Within days of Ms. Waller's report, Sergeant Anderson substantiated Ms. Waller's claim that the defendant had given her the ring through statements of others who had seen the defendant in possession of the ring or who knew the defendant had access to the ring.

Harold Dean Baker, the victim, had hired the defendant to perform carpentry work in his home from November 2008 until the completion of the work sometime in March 2009. Mr. Baker, a retired contractor who suffered from Parkinson's disease, hired the defendant and several other individuals to finish an area over his garage and enlarge the master bathroom area of the home. Mr. Baker allowed the defendant and other workers use of his red trailer to haul away scraps and garbage from the renovation site. Mr. Baker first realized the red trailer was missing when Sergeant Anderson contacted him in May 2009.

The renovations to Mr. Baker's home required that a safe be removed from the master bedroom closet and relocated to an office closet. Mr. Baker recalled that the defendant and the other men moved the safe and secured it to the floor of the office closet. To secure the safe to the floor, the men opened the safe via access to the combination and key. Mr. Baker kept a 14 carat gold and diamond ring in the safe. The ring included a two carat center diamond surrounded by 1.25 carats of baguettes. An insurance appraisal performed at the time of the ring's purchase in February 2005 valued the ring at $21,175.

Mr. Baker testified at trial that the defendant was a good carpenter. He recalled, however, that the defendant became upset when Mr. Baker hired a more qualified contractor for a subsequent project because, at the time of the hiring, the defendant did not have a truck. Mr. Baker later saw the defendant driving "an old blue pick-up truck."

Mr. Baker admitted that he showed the defendant and other workers the coins and ring that he kept in the safe. He also admitted that the combination and key to the safe were kept in a file folder in his office file cabinet and that all of the workers had access to that area of the house during the renovations. In addition to the stolen ring, Mr. Baker suffered the theft and forgery of some checks from his checkbook. Another carpenter and his wife, Bradley and Amy Knupp, pleaded guilty to the theft of the checks prior to the defendant's trial. Mr. Baker testified that he now keeps the diamond ring in a safety deposit box at his bank.

Brenda A. Peeler, a 49-year employee and manager of Hodges Jewelers in Dickson, confirmed that Mr. Baker's ring was appraised by the since-deceased owner,

Thomas E. Hodges. She identified the appraisal document and confirmed, as a licensed appraiser herself, the value of the ring to be $21,175.

Bradley A. Knupp testified that he and the defendant worked together on the renovations to Mr. Baker's home. Mr. Knupp admitted that he stole checks from the victim's checkbook and that he pleaded guilty to the offenses involving the stolen checks. At the time of the defendant's trial, Mr. Knupp was serving a probationary sentence for the check offenses. Although candidly admitting the check offenses, Mr. Knupp denied ever seeing the ring. He testified, however, that the defendant had the key to the safe at one time and that the victim kept a folder containing the combination in open view during the construction. Mr. Knupp also denied seeing the safe open at any time.

Linda May Waller testified at the time of trial that she was an inmate in the Williamson County Jail following her conviction of theft charges in July 2010. Prior to her conviction, Ms. Waller managed a mobile home park that had been in her family for over 44 years. She leased a mobile home and later a house to the defendant. The Knupps also rented a mobile home from Ms. Waller. Ms. Waller described the defendant as a good renter who would always "get caught up" after periods of non-payment.

During one such period, the defendant offered Ms. Waller a ring in exchange for unpaid rent and utilities and toward the purchase of a blue pick-up truck belonging to Ms. Waller. The defendant told Ms. Waller that he had inherited the ring from his grandmother. Ms. Waller rode with the defendant to a home in Boyd Mills Estates where he retrieved the ring. She agreed to exchange the ring for payment of the back-owed rent and utilities and the truck. Within weeks of receiving the ring, Ms. Waller became suspicious that the ring may be stolen. She contacted the FPD, prompting Sergeant Anderson's investigation and her turning over the ring for return to Mr. Baker. Ms. Waller denied ever going to the victim's home or seeing any other people in possession of the ring.

Kimberly Webber met the defendant through a mutual friend sometime in early 2009. In March 2009, the defendant offered to sell Ms. Webber the victim's ring for $2,000. Ms. Webber also recalled visiting the defendant's home and seeing a red trailer in the backyard. Johnny Lee Scales, one of the defendant's roommates during early 2009, fathered a child with Ms. Webber and had also worked in the victim's home.

Georgia Polk, the defendant's neighbor in May 2009, recalled borrowing a trailer from her neighbor to move some furniture. She testified that the defendant and another man named "Hulk" shared the neighboring home. Jimmy Lewis Polk testified that he borrowed a red trailer from "Hulk," who told him that the defendant would not mind him using it to move furniture. He said that he would not have borrowed it had he known it was

stolen.

Following a full *Momon* colloquy, *see Momon v. State*, 18 S.W.3d 159,161-62 (Tenn. 1999), the defendant elected not to testify. Carolyn Batte testified for the defendant that she worked for the victim as a bookkeeper and assistant during the same time period as the defendant worked on the victim's home renovations. She recalled that a lot of people frequented the victim's home during that time. She was often concerned because the victim would let workers use his credit cards to purchase construction materials and because the victim often left private paperwork in plain view of the workers. She also described the victim as very vulnerable due to his suffering from Parkinson's disease. Ms. Batte left the victim's employment when she obtained full-time employment elsewhere. She said she would not return to work for him because she did not have "a good feeling" about working for the victim due to the condition of his health.

Lindsey Vaughn, the defendant's girlfriend and mother of his child, denied ever seeing the defendant with the ring. She recalled that the defendant worked for the victim from November 2008 until March 2009, but she said that the defendant never worked inside the victim's home. She said that the victim allowed the defendant and Mr. Scales to use his red trailer to haul trash from the construction site.

Based upon this proof, the jury convicted the defendant in count one of theft of property valued at over $10,000 but less than $60,000 for the theft of the ring. The trial court declared a mistrial as to count two after the jury was unable to reach a unanimous verdict regarding the theft of the red trailer. At sentencing, the trial court found the defendant qualified as a Range III, persistent offender and sentenced the defendant to 15 years' incarceration.

On appeal, the defendant argues that the evidence is insufficient to support his conviction because the value of the ring was not established relative to the date of the offense. He also asserts that the trial court committed plain error by restricting his cross-examination of Ms. Waller concerning prior felony convictions.[1] The State contends that the evidence supports a conviction of theft of property valued at over $10,000. The State also concedes that the trial court committed error in excluding, as impeachment evidence, proof of Ms. Waller's felony drug convictions but argues that the error did not rise to the level of plain error because reversal is not necessary to do substantial justice.

---

[1] The defendant failed to include this allegation of error in his motion for new trial filed by his original trial counsel. Subsequent counsel raised the issue via plain error on appeal.

*Sufficiency of the Evidence*

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id*. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. Theft of property valued at more than $10,000 but less than $60,000 is a Class C felony. *See id*. § 39-14-105(4).

The defendant does not contest the sufficiency of the proof to establish that a theft occurred but does contest the sufficiency of the proof establishing the value of the ring. "Value," as relevant to the theft in this case, is defined by our Code as

> (i) The fair market value of the property or service at the time of the offense; or
> (ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense;

T.C.A. § 39-11-106(36)(A)(i) - (ii). The Code further provides "[i]f the property or service has value that cannot be ascertained by the criteria set forth . . . ., the property or service is deemed to have a value of less than fifty dollars." *Id*. at §39-11-106(36)(C). Furthermore, Tennessee Rule of Evidence 701(b) provides "[a] witness may testify to the value of the witness's own property or services."

In this case, Mr. Baker testified that he paid $3,600 for the ring setting and an additional $16,000 for the two carat diamond center-stone. He identified, without objection, insurance appraisal documents relevant to the stolen ring. Ms. Peeler, a lifelong employee of Hodges Jewelers where Mr. Baker purchased the center-stone, authenticated, without objection, the appraisal document and confirmed that the appraisal, completed in February 2005, valued the ring at $21,175. Contrary to the defendant's argument, the State is not obliged to perform an independent appraisal of a stolen item when it becomes evidence in a prosecution. Furthermore, a theft victim may base testimony concerning the value of a stolen item upon an appraisal of the item. *See*, *e.g.*, *State v. Jerry Lee Truette*, M2005-00927-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App. July 19, 2006) (victim's testimony concerning value of stolen antiques based, in part, upon appraisal of items held sufficient to establish value for restitution purposes in a theft case). Accordingly, we conclude that sufficient evidence exists to establish the value of the ring and, therefore, the defendant's conviction of theft of property valued at over $10,000 but less than $60,000.

*Plain Error/Rule 609*

Next, the defendant urges this court to conclude that the trial court committed plain error by limiting the use of Ms. Waller's felony convictions as impeachment. *See* Tenn. R. Evid. 609(a). The State concedes that the trial court erroneously excluded evidence of Ms. Waller's felony drug convictions but argues that the error does not rise to level of plain error.

Pursuant to Rule 36(b) of the Tennessee Rules of Appellate Procedure, "an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial" where consideration of the error is "necessary to do substantial justice." Tenn. R.App. P. 36(b). Before an error may be so recognized, however, it "must be 'plain' and it must affect a 'substantial right' of the accused." *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). The word "'plain' is synonymous with 'clear' or equivalently 'obvious.'" *United States v. Olano*, 507 U.S. 725, 734 (1993) (citing *United States v. Young*, 470 U.S. 1, 16 n.14 (1985)). Authority to correct an otherwise "forfeited error" lies strictly "within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 732 (citations omitted).

In *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000), our supreme court adopted the definition of "substantial right" promulgated by this court in *Adkisson*. There, we held that "a 'substantial right' is a right of 'fundamental proportions in the indictment process, a right to the proof of every element of the offense, and is constitutional in nature.'"

*Adkisson*, 899 S.W.2d at 639. Our supreme court also adopted *Adkisson*'s five factor test for determining whether an error should be recognized plain:

> (a) the record must clearly establish what occurred in the trial court;
>
> (b) a clear and unequivocal rule of law must have been breached;
>
> (c) a substantial right of the accused must have been adversely affected;
>
> (d) the accused did not waive the issue for tactical reasons; and
>
> (e) consideration of the error is "necessary to do substantial justice."

*Smith*, 24 S.W.3d at 282 (quoting *Adkisson*, 899 S.W.2d at 641-42). "[A]ll five factors must be established by the record before this court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* at 283. To be reviewable as "plain," the error "'must [have been] of such a great magnitude that it probably changed the outcome of the trial.'" *Id.* (quoting *Adkisson*, 899 S.W.2d at 642) (alteration in original). Finally, "the burden of establishing entitlement to relief for plain error is on the defendant claiming it." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004).

> Tennessee Rule of Evidence 609 provides in pertinent part:
>
> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:
>
> (1) The witness must be asked about the conviction on cross-examination. If the witness denies having been convicted, the conviction may be established by public record. If the witness denies being the person named in the public record, identity may be established by other evidence.
>
> (2) The crime must be punishable by death or imprisonment in

excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

Tenn. R. Evid. 609(a).

In this case, the State requested a jury-out hearing prior to Ms. Waller's testifying to determine the admissibility of Ms. Waller's prior felony convictions. The State agreed that Ms. Waller's recent felony theft conviction could be used as impeachment. The State, however, argued that Ms. Waller's felony drug convictions should be excluded because they were not probative of her credibility. Although the trial court questioned the applicability of the State's argument to a witness other than the defendant, the State insisted that the holdings of *State v. Waller*, 118 S.W.3d 368 (Tenn. 2003), and *State v. Walker*, 29 S.W.3d 885 (Tenn. Crim. App. 1999), required that a trial court find that a felony conviction used as impeachment be probative of credibility when used to impeach *any* witness, not just "the accused in a criminal prosecution." *But see* Tenn. R.Evid. 609(a). We note that the holdings in *Waller* and *Walker* concerned the admissibility of a defendant's prior convictions via Rule 609(a)(3) and have no application to the impeachment of a non-accused witness via Rule 609(a)(2). Nevertheless, persuaded by the State's argument and with little or no insightful argument to the contrary presented by trial counsel, the trial court ruled inadmissible Ms. Waller's felony drug convictions. As previously noted, the defendant did not raise the exclusion of the felony convictions as error in his motion for new trial.

On appeal, the State correctly asserts that the trial court erred by excluding Ms. Waller's prior felony convictions. Rule 609(a)(2) clearly allows the impeachment of a witness who is not "the accused in a criminal prosecution" by evidence of a felony conviction regardless of the conviction's bearing on veracity. The State, however, argues that this error

-8-

did not rise to the level of plain error due to the ambiguity in the record concerning the nature of the erroneously excluded convictions and also because consideration of the error is not necessary to do substantial justice in light of Mr. Knupp's and Ms. Webber's testimony that the defendant possessed the key to the victim's safe and possessed the ring for some weeks leading up to his giving the ring to Ms. Waller.

In our view, the record is somewhat ambiguous regarding the nature of the prior convictions sought by the defendant to be used as impeachment. The record only shows that the witness possessed prior felony drug convictions possibly relating to the sale or delivery of marijuana and/or oxycodone. The defendant never proferred any specific evidence concerning the witness's prior convictions. *See* Tenn. R.Evid. 103(a)(2) (requiring a proffer by a party opposing the exclusion of the evidence). Furthermore, the defendant extensively cross-examined the witness concerning her recent theft conviction as it related to her veracity at trial. Ms. Waller, however, was not the only witness to testify concerning the defendant's possession of the ring. Ms. Webber testified that in late March the defendant attempted to sell her the ring. Mr. Knupp, the victim, and Ms. Batte all testified that the defendant had access to the combination and key to the safe where the ring was stored. Under these circumstances, we conclude that consideration of the error is not necessary to do substantial justice and decline to afford plain error review.

*Conclusion*

The evidence is sufficient to support the defendant's conviction of theft of property valued at over $10,000 but less than $60,000. We decline to review the trial court's exclusion of impeachment evidence via the plain error rule. Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE